IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE A. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06 C 3459 |
| | ) | |
| OSCAR SZCZERBINSKI, CAROL DOUGHERTY, DICK LALOWSKI, JEFFREY ROTKVICH, MICHAEL HOLDMAN, and RICHARD ROZKUSZKA, | ) ) ) ) | Judge Virginia Kendall |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR JUDGMENT
AS A MATTER OF LAW PURSUANT TO RULE 50(a)**

Defendants, Oscar Szczerbinski, Carol Dougherty, Jeffrey Rotkvich, Michael Holdman and Richard Rozkuszka, by and through their attorneys, Ellen K. Emery and Lucy B. Bednarek of Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C., move this Court pursuant to Federal Rule of Civil Procedure 50(a) for judgment as a matter of law in favor of Defendants and against Plaintiff Wayne Adams. In support of this motion, Defendants state as follows:

**I.   INTRODUCTION**

Under Federal Rule of Civil Procedure 50(a), "[i]f during a trial by jury a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable ruling." Anderson v. Liberty

1

Lobby, 477 U.S. 242, 252 (1986). The trial judge must direct a verdict, if under the governing law, there can be only one reasonable conclusion as to the verdict. Id. at 251.

## II.   INVESTIGATORY STOP

Officer Szczerbinski began to develop a reasonable suspicion of criminal activity when he first drove by the O'Hare Honda car dealership, and saw a car with the silhouette of a person in it, with its lights off, parked the wrong way in the lot, at 11:45 p.m. He knew the car dealership was in a high crime area and had been the subject of criminal activity, such as burglary, theft and damage to property.

Plaintiff Wayne Adams was also speeding on River Road after he pulled out of the car dealership. Based on the undisputed testimony of Officer Szczerbinski, Adams was traveling 41- 42 miles per hour in a 35 mile per hour zone.

The totality of circumstances allowed Officer Szczerbinski to reasonably suspect criminal activity and justified a brief investigatory detention. See Smith v. Ball State Univ., 295 F.3d 763 (7th Cir. 2002); Tom v. Voida, 963 F.2d 952, 957 (7th Cir. 1992); and United States v. Yang, 286 F.3d 940, 949 (7th Cir. 2002).

After Officer Szczerbinski pulled Adams over, he became further suspicious when Adams would not tell him what he was doing at the car dealership, Szczerbinski saw a flashlight in the front seat, and Adams was acting strangely and aggressively toward him.

In addition, Adams' statements that he was a "police officer, alderman and attorney in this town" justified Szczerbinski's request that Adams step out of his vehicle so he could determine whether Adams had a weapon. Officer Szczerbinski did not recognize Adams as being a Des Plaines police officer and knew that police officers carry guns.

Further, Adams' aggressive behavior when Officer Szczerbinski was patting him down warranted his being handcuffed for the safety of Officer Szczerbinski and the other responding officer, Dick Lalowski.

Adams' aggressive behavior, lack of cooperation, verbal abuse of both officers, and statement that he was a police officer warranted his being detained and handcuffed under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968). Where a police officer has a reasonable suspicion, based upon observable facts, that an individual has committed or may be committing a criminal offense, he may stop an individual motorist and detain that individual, for a reasonable period of time, to investigate. During the investigation, the officers are permitted to conduct a pat down of the individual for the safety of the officers, and where the officers reasonably believe that the individual may be potentially dangerous, the individual may be placed in handcuffs and placed in the squad car during the investigation. Terry v. Ohio, 392 U.S. at 24; United States v. Shoals, 478 F.3d 850, 853 (7th Cir. 2007); United States v. Stewart, 388 F.3d 1079, 1084-85 (7th Cir. 2004).

As such, Officer Szczerbinski's decision to detain Adams by handcuffing him until he could find out what he was doing at the O'Hare Honda and whether he had a gun was a constitutionally permissible investigatory stop under Terry.

### III. FALSE ARREST CLAIMS AGAINST SZCZERBINSKI AND DOUGHERTY – PROBABLE CAUSE.

Adams claims that Defendants Szczerbsinki and Dougherty subjected him to false arrest in violation of the Fourth Amendment. To establish his false arrest claim, Adams must show that Defendants lacked probable cause to arrest him. Beck v. Ohio, 379 U.S. 89, 91 (1964); Maxwell v. City of Indianapolis, 998 F.2d 431, 433 (7th Cir. 1993).

Probable cause for an arrest exists if a police officer reasonably believes, in light of the facts and circumstances within his knowledge at the time of the arrest, that the suspect has committed an offense. Booker v. Ward, 94 F.3d 1052, 1057 (7th Cir. 1996). Probable cause is not evaluated "on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer – seeing what he saw, hearing what he heard." Id. at 1057-58. The test is whether a reasonable police officer would have believed the person had committed a crime. If so, the arrest is lawful even if the belief was ultimately found to be mistaken. Sheik-Abdi v. McClellan, 37 F.3d 1240, 1246 (7th Cir. 1994).

Probable cause is an objective test, based upon "factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." Wollin v. Gondert, 192 F.3d 616, 623 (7th Cir. 1999. Arresting officers may draw reasonable inferences based on their training and experiences in determining whether suspicious circumstances rise to the level of probable cause. Id.

Here, there was probable cause to arrest Adams for criminal trespass to the O'Hare Honda. As explained above, Officer Szczerbinski saw Adams in the car dealership, with its light off, parked the wrong way, at 11:45 p.m. at night. He knew the car dealership was in a high crime area and had been the subject of criminal activity. Further, after Officer Szczerbinski conducted an investigatory stop, Adams would not tell him what he was doing at the car dealership, Szczerbinski saw a flashlight in the front seat, and Adams was acting strangely and aggressively toward him. Because Adams would not tell Szczerbinski what he was doing at the dealership at almost midnight, the Szczerbinski reasonably believed he did not belong there. In addition, because of the prior criminal activity at the dealership, and Adams' bizarre behavior, Szczerbinski reasonably believed Adams

4

might have been previously warned to stay off the property. As such, probable cause existed to arrest Adams for criminal trespass.

In addition, probable cause also existed to arrest Adams for speeding. Adams was traveling 41- 42 miles per hour in a 35 mile per hour zone, in violation of 625 ILCS 5/11-601. Probable cause also existed to arrest Adams for no insurance. It is undisputed that Adams failed to produce proof of his car insurance when requested. Under 625 ILCS 5/3-707, it is a violation to drive a car without liability insurance. Under Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.Ct. 1536 (2001), it is constitutionally permissible to make a full-blown custodial arrest if a police officer has probable cause to believe that a motorist has committed a traffic offense.

When Sergeant Dougherty arrived at the scene, Officer Szczerbinski provided her with information about his observations that night. Based on the information Officer Szczerbinski provided to her, and Sergeant Dougherty's own observations of Adams being uncooperative and acting strangely, Sergeant Dougherty also had probable cause to arrest Adams.

Therefore, probable cause existed to arrest Adams for either criminal trespass, speeding or no insurance. It is not necessary that Defendants had probable cause to arrest Adams for a specific claim, so long as Defendants had probable cause to arrest him for some criminal offense. Gramenos v. Jewel Co., 797 F.2d 432, 437-442 (7th Cir. 1986). As such, this Court should grant judgment as a matter of law in favor of Defendants Szczerbinski and Dougherty on Adams' false arrest claims.

## IV. FALSE ARREST CLAIMS AGAINST ROTKVICH, HOLDMAN AND ROZKUSZKA – PROBABLE CAUSE.

Probable cause also existed to arrest Adams for battery. Adams admitted that he threw a toothpick at Detective Rotkvich, and hit him in the chest with it. This action constitutes battery.

Under Illinois law, a battery occurs when one "intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting **or** provoking nature with an individual." 720 ILCS 5/12-3(a) (emphasis added).

First, the toothpick could have caused bodily harm to Detective Rotkvich. Detective Rotkvich testified that the saliva laden toothpick could have struck him in the eyes or mouth. If the toothpick struck Rotkvich in the eye, or went into his mouth, he would have been exposed to any diseases the saliva was carrying, including HIV. In addition, Rotkvich testified Adams could have used the toothpick as a weapon and stabbed him in the eye.

Further, intentionally throwing a toothpick full of saliva at Detective Rotkvich is both insulting and provoking physical contact. Rotkvich testified that when asked to remove the toothpick from his mouth, Adams took a second to "gob it up" with saliva. This act was similar to being spit at and was insulting to Rotkvich. Rotkvich also testified he believed Adams was trying to "bait" him into an altercation, or provoke him. As such, after Adams threw the toothpick at Rotkvich, probable cause existed to arrest him for battery.

## V.    QUALIFIED IMMUNITY - PROBABLE CAUSE

Defendants are also entitled to judgment as a matter of law on the basis of qualified immunity. Once a court finds probable cause, it need not address the question of whether the defendant officer is entitled to qualified immunity. <u>Wollin v. Gondert</u>, 192 F.3d 616, n.1 (7th Cir. 1999). However, in the alternative, if this Court does not find probable cause existed to arrest Adams on River Road or in the police station, Defendants will address the issue of qualified immunity.

The issue of qualified immunity is a question of law for the court. <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 528, 105 S.Ct. 2806 (1985). Qualified immunity protects government officials performing discretionary functions from liability for civil rights damages as long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

Courts use a two-step analysis to determine whether qualified immunity exists. First, the court must decide whether the plaintiff has alleged a constitutional violation. Assuming the court finds a constitutional violation, it next determines whether the defendants' conduct constitutes a violation of clearly established laws. For qualified immunity to fail, preexisting law must dictate and truly compel the same conclusion for every like-situated, reasonable government agent that what he is doing violates federal law under the circumstances. <u>Lassiter v. Alabama A&M Univ.</u>, 28 F.3d 1146, 1150 (11th Cir. 1994). This objective analysis asks whether a reasonable person could have believed the defendants' actions were unlawful.

In other words, police officers are entitled to qualified immunity where their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Mitchell v. Forsyth</u>, 472 U.S. 511 (1985). In this context, the law tolerates reasonable error because "officials should not err always on the side of caution because they fear being sued." <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991). "Qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law. If officers of reasonable competence could disagree on this issue, immunity should be recognized." <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

Whether a police officer had probable cause to arrest a suspect and whether he is entitled to qualified immunity for the arrest are closely related questions, although qualified immunity provides the officer with an "additional layer of protection against civil liability" if a reviewing court finds that he did not have probable cause. Williams v. Jaglowski, 269 F.3d 778 (7th Cir. 2001), citing Hughes v. Meyer, 880 F.2d 967, 970 (7th Cir. 1989). In an unlawful arrest case in which the defendant raises qualified immunity as a defense, the reviewing court will "determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." Humphrey v. Staszak, 148 F.3d 719, 725 (7th Cir. 1998). If the officer can establish that he had "arguable probable cause" to arrest the plaintiff, then the officer is entitled to qualified immunity, even if a court later determines that he did not actually have probable cause. Id.

Here, Defendants are entitled to qualified immunity for false arrest because probable cause existed to arrest Adams at River Road and again in the police department. Defendants' beliefs that their actions were lawful in arresting Adams were not unreasonable. See Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001) (officer entitled to qualified immunity unless he had notice that conduct was unlawful).

Although qualified immunity is an affirmative defense, the burden of defeating an assertion of qualified immunity rests with the plaintiff. Clash v. Beatty, 77 F.3d 1045, 1047-48 (7th Cir. 1996). Because Defendants asserted the defense of qualified immunity, Adams had the burden at trial to prove that Defendants lacked probable cause to arrest him. A plaintiff has a difficult hurdle to clear in getting around the defense of qualified immunity in a probable cause to arrest situation. Darby

8

v. Dixon, 2003 WL 221594474 (N.D.Ill. 2003); Graham v. Niles, 2003 WL 22995159 (N.D.Ill. 2003). Adams did not do so here.

In sum, Defendants are entitled to qualified immunity because the officers reasonably believed Adams had committed or was committing an offense. See Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534 (1991). Under the circumstances described above, Defendants did not act in violation of clearly established law or with deliberate indifference to its requirements. As such, Defendants are entitled to qualified immunity as a matter of law for Adams' false arrest claims.

## VI. EXCESSIVE FORCE CLAIMS AGAINST SZCZERBINSKI, ROTKVICH AND HOLDMAN.

Defendants Szczerbinski, Rotkvich and Holdman are also entitled to judgment as a matter of law on Adams' excessive force claims. In affirming the granting of defendant's motion for directed verdict in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989), the Supreme Court held that it is plaintiff's burden to demonstrate that the defendant police officer used force excessive under the Fourth Amendment.

To do so, the plaintiff must show that the officer's use of force was objectively excessive from the perspective of a reasonable officer on the scene under the totality of the circumstances. Id.; Bell v. Irwin, 321 F.3d 637, 639 (7th Cir. 2003). Among the relevant facts a court should consider are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." Graham, 490 U.S. at 396. The Supreme Court also noted that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are

9

tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Id. at 396. The question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Id. at 397.

Plaintiff's claims that Defendants used excessive force when handcuffing him on River Road, when searching him at the police station and when handcuffing him at the police station do not establish excessive force.

First, Plaintiff's claim that Defendant Szczerbinski used excessive force when handcuffing him on River Road, because the handcuffs were too tight, does not constitute excessive force. In Tibbs v. City of Chicago, 469 F.3d 661, 665 (7th Cir. 2006), the Seventh Circuit held that an allegation of excessive force based entirely on the plaintiff's claim that his handcuffs were too tight and the officer refused to loosen them does not constitute excessive force. Similarly, in Braun v. Baldwin, 346 F.3d 761, 763 (7th Cir. 2003), the Seventh Circuit recognized that an excessive force claim based on tight handcuffs "has no possible merit."

Further, in McNulty v. Village of Deerfield, 1998 WL 30676, at 3 (N.D.Ill. 1998), the court held the officers did not use excessive force when handcuffing the plaintiff, despite the plaintiff's complaint to the officers that he was suffering pain from the handcuffs. The court recognized that "[o]fficers would face serious threat to their safety and would threaten the safety of others if they loosened or removed an arrestee's handcuffs upon a complaint of pain or discomfort." Id. The court

further explained that finding tight handcuffs are unconstitutional "would open the floodgates of litigation to any individual who was ever arrested or handcuffed." Id.

Adams' claim that Detective Holdman used excessive force when searching him at the police station also has no merit. There is no evidence that Adams' bruises on his inner thighs were caused by Detective Holdman, other than Adams' self-serving testimony. Detective Holdman testified he searched Adams' thigh area but did not use unreasonable force to do so. Adams' claims that he sustained injury as a result of the arrest does not show, by itself, that the officers' conduct was unreasonable. Brownell v. Figel, 950 F.2d 1285, 1293 (7th Cir. 1991).

Finally, Adams' claim that Detective Rotkvich used excessive force when handcuffing him after he battered Rotkvich also has no merit. After Adams was told he was under arrest for battery, he stiffened one arm, flailed the other, and would not present his hands to be cuffed. As a result, Officer Rotkvich used reasonable force to place Adams' arm behind him in order to handcuff him.

Defendants' actions did not constitute objectively excessive force as a matter of law. There is no way their actions can be deemed excessive from the perspective of a reasonable officer on the scene under the totality of the circumstances. Another officer, also acting reasonably, might have responded with spraying Adams or using his baton to subdue him. These officers did not so. They used only their hands to restrain Adams, despite Adams' active obstruction of the officers in the performance of their duties, his battering of Officer Rotkvich, and then his continued physical resistance to any arrest. See California v. Hodari D., 499 U.S. 621, 626 111 S.Ct. 1547 (1991) (holding that all arrests require some level of force or submission); Graham, 490 U.S. at 396 (noting that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment").

Adams can point to nothing in the record to show the officers exercised any more force than necessary to handcuff Adams on River Road, to search Adams at the police station and to handcuff Adams again after he battered Detective Rotkvich at the police station. As such, this Court should enter judgment in favor of Defendants Szczerbinski, Holdman and Rotkvich on Adams' excessive force claims.

**VII.    QUALIFIED IMMUNITY - EXCESSIVE FORCE**

Finally, even if this Court were to find the evidence leaves a remaining question of fact as to the reasonableness of Defendants' use of force, Defendants are entitled to qualified immunity on Adams' excessive force claims. As explained above, a police officer is shielded from liability for his official act, unless he violates a clearly established constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001). It is Adams' burden to establish that the Defendant officers violated his clearly established rights, either by citing a case closely similar to his in which force was found to be unreasonable, or by showing that the force was so egregious that it was plainly excessive even if no comparable cases exist. <u>Denius v. Dunlap</u>, 209 F.3d 944 (7th Cir. 2000); <u>Smith v. City of Chicago</u>, 242 F.3d 737, 742 (7th Cir. 2001).

However, Adams can cite no similar cases or authority to support his claim that the officers used force that was excessive. Moreover, the officers followed the instructions of their supervisors and the procedures of the Des Plaines police department in effectuating his arrest. Under these circumstances, the officers are entitled to qualified immunity. There is no evidence they believed their actions were unlawful or unreasonable. <u>Saucier</u>, 533 U.S. at 201-02 (officer entitled to qualified immunity unless they had notice that conduct was unlawful).

## VIII. BATTERY CLAIM AGAINST ROTKVICH.

If this Court finds that no excessive force occurred, then judgment as a matter of law must also be entered in favor of Detective Rotkvich on Adams' battery claim. Askew v. City of Chicago, 2005 WL 1027092, at 9 (N.D.Ill. 2005) (if the court finds that the force used to arrest the plaintiff was reasonable, the plaintiff's battery claim must also fail).

However, in the alternative, Detective Rotkvich is immune from Adams' battery claim under Section 2-202 of the Illinois Governmental and Governmental Employees Tort Immunity Act. 745 ILCS 10/2-202. Under Illinois law, a battery occurs when one "intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a).

Under the Tort Immunity Act, police officers are protected for liability in the enforcement of any law unless the act was willful and wanton. 745 ILCS 10/2-202. Willful and wanton conduct is defined as a "course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

Here, there is no evidence that Detective Rotkvich's actions when handcuffing Adams in the police station constituted willful and wanton conduct. Significantly, courts have held that handcuffing is reasonable in almost all arrest situations and that at least some force is necessary. Estate of Philips v. City of Milwaukee, 123 F.3d 586, 593 (7th Cir. 1997).

For example, in Smith v. City of Chicago, 242 F.3d 737 (7th Cir. 2001), the plaintiff claimed the officers pulled the plaintiff out of his car, slammed him against the hood of his car and handcuffed him. Id. at 744. The court granted summary judgment on both the plaintiff's excessive

force and battery claims. The court explained that under Section 2-202, police officers will not held liable for battery claims when enforcing the law unless their acts are willful and wanton. Id.; 745 ILCS 10/2-202. The court further held the evidence did not support a finding that the officers' actions in arresting the plaintiff were willful and wanton. Id.

Similarly, here, because the force used by Detective Rotkvich to handcuff Adams was reasonable, and no excessive force occurred, this Court should enter judgment as a matter of law on Adams' battery claim.

## VIX. EXCESSIVE FORCE CLAIM AGAINST DETECTIVE HOLDMAN.

Finally, in the alternative, Detective Holdman is entitled to judgment as a matter of law on Adams' excessive force claim. Adams testified that as a result of the unlawful conduct that night, he suffered bruises to his thighs. However, he admitted that he did not know which officer inflicted the bruises on him.

Adams testified that Defendant Lalowski might have inflicted the bruises on his thighs when Lalowski searched him on River Road. However, he also testified the bruises on his thighs might have been inflicted by Detective Holdman when he was searched at the police station.

Adams may not hold Detective Holdman liable for what another officer did. Walker v. Roe, 991 F.2d 507 (7th Cir. 1986); Duckworth v. Franzen, 780 F.2d 645, 650 (7th Cir. 1985). Because Adams does not know who inflicted the bruises on his thighs, Detective Holdman is entitled to judgment as a matter of law on Adams' excessive force claim.

WHEREFORE, the Defendants, Oscar Szczerbinski, Carol Dougherty, Jeffrey Rotkvich, Michael Holdman and Richard Rozkuszka, respectfully request that this Court enter judgment as a matter of law in their favor and against Plaintiff.

Respectfully submitted,

By: /s/ Lucy B. Bednarek
    One of Defendants' Attorneys

Ellen K. Emery
Lucy B. BEdnarek
ANCEL, GLINK, DIAMOND, BUSH, DiCIANNI & KRAFTHEFER, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
(312) 782-7606
(312) 782-0943 Fax